**CHEMTOOL, INC., Plaintiff–Appellant,**

v.

**LUBRICATION TECHNOLOGIES, INC., Defendant–Appellee.**

No. 97–1192.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1998.

Decided June 19, 1998.

Before EASTERBROOK, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Chemtool, Inc. sued Lubrication Technologies, Inc. ("Lube Tech") alleging that Lube Tech was its agent and breached the fiduciary duty an agent owes its principal. After a bench trial, the district court found no agency relationship between the parties. The court also found that even if there had been an agency relationship, Lube Tech did not breach its fiduciary duty. We affirm.

## I. HISTORY

We recite the facts here largely as they appear in the district court's Bench Opinion, *Chemtool Incorporated v. Lubrication Technologies*, No. 94 C 50193, 1994 WL 716314 (N.D.Ill.Dec.27, 1994). Chemtool is an Illinois corporation that manufactures and sells industrial lubricants, coolants, and cleaners. James Athans is the president, James Ahling is a salesman, Mark Chianakas was Vice President for Sales and Marketing, and Bill Spieth became Vice President for Sales and Marketing after Chianakas.

Lube Tech is a Minnesota corporation that provides products and services relating to industrial lubricants. The current Lube Tech corporation is the result of several corporate sales, acquisitions, and mergers that are not relevant to this appeal. Although the corporation was not known by the name "Lube Tech" during the entire period described in these facts, it makes no difference to the case. For simplicity's sake we will simply refer to the corporation as "Lube Tech." Chris Bame is the president of Lube Tech.

Richard Schultz was a salesman at Chemtool, but he left Chemtool to become a salesman at Lube Tech. While working for each firm, he provided customer services to Trane company.

Trane has been using Chemtool products since the early 1980s. Schultz's responsibility was to monitor the machines at Trane that use Chemtool products and, when necessary, add dyes, biocides, or other chemicals to solve problems. Lube Tech did not sell Chemtool products to Trane. Chemtool shipped its products directly to Trane and

billed Trane for them directly. Gerry Campbell is the plant engineer at Trane.

In May 1992, Chemtool and Lube Tech made a verbal agreement. Lube Tech agreed to continue servicing Trane, and Chemtool agreed to pay Lube Tech a 10% commission. Chianakas wrote Athans a memo summarizing the agreement. He called their agreement "a loose one," allowing Chemtool some flexibility and a chance to decide whether to enter into a more permanent relationship with Lube Tech at some time later. Although Ahling had visited the Trane plant in the past, his visits became much less frequent after the verbal agreement between Chemtool and Lube Tech.

Chemtool did not make specific requirements of Schultz or Lube Tech, such as asking for periodic reports or imposing a sales floor. In fact, Chemtool did not allow Schultz to make price quotes on Chemtool products. If Trane wanted a price quote, Schultz conveyed the request to Chemtool. Schultz's duties at Trane were to monitor Trane's machines for problems with Chemtool products and to communicate problems or requests for price quotes.

In 1992, Trane complained about the delivery system for Chemtool products. Campbell told Schultz several times that he would prefer to receive Chemtool products in 220 gallon totes instead of 55 gallon barrels. Schultz conveyed this concern to Ahling at Chemtool. Schultz had no authority to change the delivery system himself. After some delay, Chemtool changed the delivery system at Trane by installing a tank system. That is, Chemtool refilled large tanks on Trane's premises directly from tanker trucks, and Trane refilled its own smaller totes from the large tank. However, Trane remained dissatisfied with the delivery system. The new tank system was awkward in Trane's facility and required many man-hours of filling and refilling totes.

In April 1993, Athans himself visited the Trane plant. Campbell expressed his dissatisfaction with the tank system, and Athans promised to give Campbell a plan in ten days for installing a tote system. Athans did not follow up on this. The tank system remained in place.

In September 1993, Campbell asked Schultz for a price quote on DEA-free coolant from Chemtool. For environmental and economic reasons, Trane needed to switch to products not containing DEA. Campbell also repeated his request for delivery by tote. Schultz relayed both these concerns to Ahling. Ahling did not respond.

Because Ahling failed to respond, Schultz recommended that Campbell talk to one of Chemtool's competitors, S & S Industrial Services, about DEA-free products. Campbell did so, and S & S brought some products to the Trane facility for testing. After testing, Campbell informed Chemtool that it would no longer be purchasing Chemtool's DEA-containing coolant.

Chemtool sued Lube Tech in Illinois state court. Chemtool alleged that Lube Tech was its agent and breached the agent's fiduciary duty by undertaking a plan to undermine Chemtool's relationship with Trane. Chemtool alleged that Lube Tech failed to rectify or bring Chemtool's attention to problems at Trane and failed to tell Chemtool how serious Trane's concerns about totes and DEA-free products were. Chemtool further alleged that Lube Tech acted as a sales representative for S & S by introducing S & S products to Trane as replacements for Chemtool products.

Lube Tech removed the case to federal court. The case proceeded to a bench trial. The court found that Lube Tech was not Chemtool's agent, and that even if it were, Lube Tech had not breached its fiduciary duty to Chemtool. Chemtool appeals.

## II. ANALYSIS

■ This appeal comes to us after a bench trial. We review the trial court's findings of fact for clear error. *See* Fed.R.Civ.P. 52(a) ("Findings of fact ... shall not be set aside unless clearly erroneous...."); *Thornton v. Brown,* 47 F.3d 194, 196 (7th Cir.1995). A factual finding is clearly erroneous only if we are "left with the definite and firm conviction that a mistake has been committed." *Thornton,* 47 F.3d at 196 (citations omitted). Questions of law are re-

viewed *de novo. See McFarlane v. Life Ins. Co. of North Am.,* 999 F.2d 266, 267 (7th Cir.1993).

### A. *Proper Test for Agency*

■ Chemtool argues first that the district court applied the wrong test to determine whether, under Illinois law, Lube Tech was Chemtool's agent. Whether the district court applied the correct test is a question of law to be reviewed *de novo. See id.*

The district court used the following test to evaluate the relationship between Chemtool and Lube Tech:

> The test to determine whether a principal-agent relationship exists is whether the alleged principal has the right to control the agent, and whether the alleged agent can affect the legal relationships of the principal. *Moy v. County of Cook,* 244 Ill.App.3d 1034, 185 Ill.Dec. 131, 614 N.E.2d 265, 267 (1993). Therefore, in order for Chemtool to establish a principal-agent relationship between itself and Lube Tech, it must show that (1) Chemtool had the right to control the conduct of Lube Tech and Schultz; and (2) Lube Tech had the power to effect [sic] the legal relations of Chemtool.

Bench Opinion at 9.

■ Chemtool, on the other hand, argues that the proper test for agency is whether, by contract or by conduct, the parties agreed to an agency relationship. This is not a test; it begs the question. It is certainly true that "[u]nder Illinois law, agency is a consensual, fiduciary relationship," *Israel v. National Canada Corp.,* 276 Ill. App.3d 454, 213 Ill.Dec. 163, 658 N.E.2d 1184, 1189 (1995). That is, parties must consent to a principal-agent relationship. But Chemtool's proposed test does not tell us to what, precisely, the parties must consent. While an agency relationship can be created by contract or by conduct, not all contracts create agency relationships and not all conduct creates agency relationships.

■ A legion of Illinois cases assures us that the district court applied the correct test. "The test of agency is whether the alleged principal has the right to control the

manner and method in which work is carried out by the alleged agent and whether the alleged agent can affect the legal relationships of the principal." *Anderson v. Boy Scouts of Am., Inc.,* 226 Ill.App.3d 440, 168 Ill.Dec. 492, 589 N.E.2d 892, 894 (1992); *see also, e.g., Taylor v. Kohli,* 162 Ill.2d 91, 204 Ill.Dec. 766, 642 N.E.2d 467, 468–69 (1994); *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302, 1310 (1990); *Israel,* 213 Ill.Dec. 163, 658 N.E.2d at 1189; *Moy v. County of Cook,* 244 Ill.App.3d 1034, 185 Ill.Dec. 131, 614 N.E.2d 265, 267 (1993); *cf. Valenti v. Qualex, Inc.,* 970 F.2d 363, 367–68 (7th Cir.1992) (applying Illinois law). "Principal among these considerations is the right to control the manner that the work is done." *Taylor,* 642 N.E.2d at 468–69 (citing *Lewis v. Mount Greenwood Bank,* 91 Ill.App.3d 481, 46 Ill.Dec. 926, 414 N.E.2d 1079, 1084 (1980)).

■ The cases cited in Chemtool's brief do not undermine this test. *Lang v. Consumers Ins. Serv., Inc.* involved a consumer claiming that someone was an apparent agent. 222 Ill.App.3d 226, 164 Ill.Dec. 825, 583 N.E.2d 1147, 1152 (1991). The Illinois Appellate Court said "[a]n agent is one who, acting under authority from another, transacts business for him, and a true agency requires that the agent's function be the carrying out of the principal's affairs." *Id.* Chemtool relies on *Lang* for the proposition that the agency relationship does not depend on whether the principal exercises control over the agent. We do not read *Lang* to stand for that proposition. The *Lang* court focused on only part of the agency calculus because the consumer pled an *apparent* agency relationship. "An apparent agent is one who, whether authorized or not, reasonably appears to third persons to be authorized to act as the agent for another person, as a result of the acts of that other person." *Id.* at 1152. A discussion of control was not necessary.

Chemtool likewise relies on *Clapp v. JMK/Skewer, Inc.* for the proposition that the agency relationship does not depend on control. 137 Ill.App.3d 469, 92 Ill.Dec. 187, 484 N.E.2d 918, 921 (1985). *Clapp* involved a patron trying to demonstrate that an inn on shopping mall premises was an agent of the shopping mall. The *Clapp* court found that

while the shopping mall may have had some control over the inn, the inn was not in the business of carrying out the mall's affairs. That is, the inn had no authority to bind the shopping mall. *Clapp* does not contradict the well-established Illinois test spelled out above. *Clapp* simply reminds us that the test for agency consists of two prongs, both of which must be satisfied. The district court correctly stated the test for agency relationships under Illinois law.

Chemtool also complains that the district court placed undue emphasis on non-binding precedent, *Manufacturers Tech., Inc. v. Cams, Inc.*, 706 F.Supp. 984, 10 U.S.P.Q.2d 1321 (D.Conn.1989). *Cams* applied Connecticut common law of agency, which is not materially different from the Illinois law on agency. *Cams* recites that under Connecticut common law, a plaintiff must show that the principal consented to have the agent act on its behalf, that the agents accepted the undertaking, that the parties understood that the principal would be in control of the undertaking, and that the agents acted " 'at the behest and for the benefit of the principal'." *Id.* at 1005 (quoting *Beckenstein v. Potter & Carrier, Inc.*, 191 Conn. 120, 464 A.2d 6, 14 (1983)). Nothing in *Cams* contravenes the Illinois test the district court found and used to evaluate the relationship between Chemtool and Lube Tech. Connecticut apparently uses the same test as Illinois does (control over the agent plus authority to bind the principal) plus two elements of consent to the relationship, one from each party. The test is not materially different. We see no error on the part of the district court in using *Cams* as persuasive authority.

### B. *Finding of No Agency Relationship*

 The district court found, after conducting a bench trial, that Lube Tech was not an agent of Chemtool. Specifically, the district court found that "Chemtool did not exercise the requisite control over the activities of Schultz or Lube Tech," Bench Opinion at 11, and that "Chemtool has not shown that Lube Tech had the authority to alter Chemtool's legal relations," Bench Opinion at 12. " [T]he existence and scope of an agency relationship are questions of fact, to be decid-ed by the trier of fact ...' ." *Valenti*, 970 F.2d at 367–68 (quoting *Rankow v. First Chicago Corp.*, 870 F.2d 356, 359 (7th Cir. 1989)). We review the district court's finding for clear error. *See* Fed. R. Civ. P. 52(a); *Thornton*, 47 F.3d at 196.

Apparently hoping that we would adopt its "contract or conduct" test, Chemtool did not challenge specifically any of the district court's factual findings regarding control and authority. Rather, Chemtool argues that (1) Chemtool and Lube Tech had an agreement whereby Lube Tech performed certain services on Chemtool's behalf; (2) when Schultz was an employee of Chemtool he was certainly an agent, and now he performs essentially the same services for Chemtool even though he works for Lube Tech. These statements, even if completely correct, do not address the district court's factual findings that Chemtool did not exercise control over the manner in which Lube Tech provided its services and that Lube Tech lacked authority to affect Chemtool's legal relations.

Even though Chemtool grounds its factual arguments on an incorrect rule of agency law, its brief can be read to challenge the district court's finding of no agency relationship. Our own review of the record reveals no clear error in the district court's findings. Chemtool exercised no control over how Schultz or Lube Tech performed services on Chemtool's behalf. Chemtool provided no equipment or work space for Schultz, and it did not make specific demands on Schultz or Lube Tech. Rather, it was Lube Tech's job to make sure that Chemtool's products were working properly in Trane's equipment and, when necessary, to supplement Chemtool's products with Lube Tech's own products to correct problems. And as Chemtool well knew, Lube Tech serviced product lines other than Chemtool's. The parties had, at most, a contractual arrangement whereby Lube Tech provided certain services in consideration of a commission.

Furthermore, the district court did not clearly err in finding that Lube Tech did not have the authority to bind Chemtool. Two pieces of evidence confirm that the district court did not err. The first is the manner in which Chemtool handled the delivery system

problem. By Chemtool's own admission, only two Chemtool employees had the authority to change the delivery system. Neither Schultz nor Lube Tech had any such authority. The second is Schultz's inability to quote prices on Chemtool products. He could only relay a request for a price quote from Trane to Chemtool. Looking at the district court's findings in light of this factual support, we cannot say that the district court clearly erred in finding that Lube Tech lacked authority to bind Chemtool. Because the district court did not clearly err in finding no control or authority, it correctly concluded there was no agency relationship.

### C. Other Arguments

Chemtool also argues that Lube Tech breached the fiduciary duty it owed to Chemtool by self-dealing, encouraging Trane to use S & S products, and failing to communicate Trane's dissatisfactions adequately. Chemtool is correct that an agency relationship necessarily implies that the agent owes the principal a fiduciary duty. "Thus, once an agency relationship is found, a fiduciary relationship arises as a matter of law." *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 258 Ill.App.3d 588, 196 Ill.Dec. 775, 630 N.E.2d 940, 946 (1994). However, we need not address these arguments because the district court correctly concluded that no agency relationship existed between Chemtool and Lube Tech.

For the foregoing reasons we AFFIRM the judgment in favor of Lubrication Technologies, Inc.